and we will move to our next case this morning. United States against Matias Zarate and this argument is partially in person and partially online. So let's give Miss Boyle a minute to come on up at the zoom podium. There she is. Okay. Can you hear me? I can. Thank you. All right. Thank you. Morning, guys. You may proceed. Good morning, your honors. For the record, my name is Bart Beals on behalf of Mr. Matias Zarate. If it please the court, counsel, your honor, before the court, I understand that my argument and the appeal in arguing that my client's sentence was unreasonable is a very daunting task. I'm fully aware of that. But just to understand the crux of my argument and also I would just like to reserve five minutes for rebuttal. That's fine. Just to get a brief overlay of the case, my client was originally, his case originates out of Texas in 2017. He was originally placed on supervised release in June of 2019. He actually transferred his supervised release officially to the Central District of Illinois in October of 2020. And I believe the first of several issues regarding allegations of violation of supervised release, I believe was in January of 2021. At least at that point, there was an agreed 90-day home confinement. Now, I just want to stop here just for a quick second. Much in looking at the record and looking at the briefs, my client, Mr. Zarate, clearly demonstrated an issue with having a health issue of chemical addiction, of drug addiction. The overwhelming majority of the petitions to violate a supervised release over the years have been primarily based on positive drug drops where he tested positive, typically testing positive for cocaine. There have been a couple of misdemeanor allegations, but primarily it's been nonviolent drug use. So going past January of 2021, so there was a 90-day home confinement that was supposed to have begun in January of 2021. There was a period of time where the parole officer or the supervised release officer could not contact my client and therefore a petition was filed to violate him. He was finally, eventually he was sentenced. There was a revocation hearing where he admitted the drug use and he received eight years of incarceration, which included the original 90-day home confinement term, but he at that point, now that was in 2021. At that point, he had already been on supervised release for two years, but he was given, when he was sentenced to eight months incarceration, he was given an additional 28 months supervised release upon completion of the eight months incarceration. So that kind of brings us to last year. And he was arrested on March 1st of 2023. Once again, the petition includes re-allegations. One of the allegations was an allegation of a misdemeanor, but the other allegations were once again, positive drug and in which case he admitted to the third paragraph in the petition for revocation. And that was in doing the revocation hearing of June of last year, and which was a positive test for cocaine. And he was given a sentence of 21 years. He had already been on, he had already been on supervised release and either supervised release or incarceration for since 2019. So he had already been involved in the process for four years. The original, in 2019, when he was placed in supervised release, his original supervised release term was three years. And that was the reason for the request during the supervised revocation hearing that my client would receive just time served since he had already been incarcerated for over three months at the time. And he had already been on supervised release for over three years at the time that he would receive time, time served. And at that point would be released from supervised release. So that's the crux of my argument in the reasonableness under the circumstances. I do understand that he was sentenced to the low end of the range for category B offense. But in light of the extended period of time that he had already been on supervised release, and the fact that he showed a history of nonviolent drug, drug abuse, and his, his violations was based on that. That was the basis for my request that he would receive time served and with supervised release would be terminated. Unless there were questions from the court, I see I'm already past my five minute rebuttal time. All right. Thank you. Thank you. Ms. Boyle. Good morning, Your Honors. May it please the court, counsel. My name is Catherine Boyle on behalf of the United States. Mr. Gerardi describes his task here as daunting, and that's correct. This court would have to find that the district court's low end guideline sentence of 21 months imprisonment was plainly unreasonable in order to overturn that sentence. And it wasn't. Here, the district court had and Mr. Gerardi agreed that a sentence of 21 to 24 months was prescribed. It weighed the policy statements and the 3553 factors, but not, not just with a blanket statement. The court went into more detail. It considered the nature and circumstances of Mr. Gerardi's offense. It wasn't his first violation. The court was particularly disturbed because it had previously granted lenience to Mr. Gerardi and then saw him here again for an additional supervised release violation. In addition to agreed modifications, which in certain cases involved not only allegations of drug or alcohol use, but also he had a conviction for a domestic battery, a misdemeanor conviction for domestic battery associated with some of that alcohol use. The court noted Mr. Gerardi's lengthy criminal history and determined that an additional term of supervised release would be unproductive given his consistent inability to apply with the terms of supervised release. And it's also notable that if you look back at Mr. Gerardi's criminal history in the pre-sentence report, you can see additional influence of drugs and alcohol affecting his crimes, such as a crime for aggravated kidnapping, where he was alleged to be under the influence of drugs and committed a violent act. Mr. Gerardi's arguments to the contrary don't overcome the presumption of Mr. Gerardi says that he had served more time on supervised release than the sentencing court initially imposed. First of all, Mr. Gerardi makes no claim that the terms of supervised release imposed by the court were impermissible. And in fact, they were permissible. And second of all, he really had only served at this point. I think if you look, his supervised release began, depending on whether you look at the Southern District of Texas or the he served about a year and nine months, nine and a half months from June 2019 to his detention in connection with the first supervised release petition in April 2021. And then he also served about a year and four months after his release on the first provocation petition between that and his arrest and detention it would be instant petition. So really, it's it's just over three years. It's not it's not a notable difference. The next point that Mr. Gerardi makes is the violation for which he was sentenced was nonviolent. The court considered that but it also said that his alcohol and drug use frequently resulted in dangerous spirals of behavior, which was an appropriate factor to consider here. Unless the court has any further questions, the government will rest on the arguments in its brief and request that the court affirm. All right, thank you very much. Thank you, Your Honors. Mr. Beals, anything further? Yes, Your Honor, just a few things further, Your Honor. As the government has already admitted that at the time of the revocation hearing, my client already served over, the government mentions just over three years, the original supervised release was three years, so we've already served more time in the supervised release than he was originally sentenced to. In addition to that, Your Honor, whereas it is true that, as I mentioned before, this is a very daunting, daunting task that's before us. As far as the defense is concerned, in this situation here, each individual when they're they're sentenced under the federal sentencing guidelines and the federal sentencing procedure, they're sentenced as individuals. They're not sentenced as classes of people. They're sentenced as individuals. Mr. Zarate, as an individual, is an individual who struggled with drug addiction, as both, I believe, defense and government will agree. In this situation, to sentence my client to 21 years, I mean 21, sorry, 21 months, thank goodness, not 21 years, 21 months additional incarceration, there's not a rational relation to say, well, how is that going to help my client with his drug addiction? Now, the district court did say that the court felt that the supervised release that they had done all they could for my client. Since they had done all they could for my client, my client had already been in custody for over 90, or approximately 90 days at a time, it's the opinion of the defense that the more reasonable sentence would have been to terminate the supervised release because the imposition of 21 months is going more towards punishment than actual rehabilitation or as an effort to actually protect the community because ultimately, the issue in this case was my client's chemical dependency. So with that, unless there are additional questions, that would surmise my rebuttal. All right, thank you very much. Our thanks to both counsel. The case is taken under advisement.